PROVIDENCE RETREAT and Others, Respondents, *v.* THE CITY OF BUFFALO and Others, Appellants.

*Municipal corporation — assessment for a sewer — when it cannot be attacked collaterally — rule of assessment — duty of assessors cannot be delegated — remedy in equity, when proper.*

Where a city, whose charter provides that "no land in the city shall be exempt from local assessments, any statute to the contrary notwithstanding," assesses, for the cost of a sewer land so situated that it can derive no benefit whatever from the construction of the sewer, and that no water can be drained from the land into the sewer without constructing drains through intervening lands belonging to other parties, over which the owner of the premises so assessed has no control, and fails to assess property benefited by the construction of the sewer, which lies directly in front of it, a direct violation of the fundamental law, from which the city derives its authority to make the assessment, is established.

An assessment cannot be attacked collaterally where the irregularities complained of are formal in their character, or where the contention is simply that the mount of the assessment is excessive, but it must be reviewed, if at all, by a writ of certiorari; where, however, the officers making the assessment have exceeded their jurisdiction it is otherwise.

*It seems,* that a rule of assessment is correct, under which lands abutting upon a street through which a sewer is laid are assessed a certain sum per foot front, and the remainder of the district is then subdivided and the land in each subdivision is assessed a certain sum per square foot, regard being had in fixing this sum to the relative distances of the several subdivisions from the sewer, and the proportionate benefit to be derived therefrom.

Where a city charter requires the assessors to act as a body, it is improper, in the exercise of the duty conferred upon them, of defining a district of assessment, to allow such district to be laid out by a third party, without holding any meeting of the board to determine its extent.

Where assessment proceedings are regular upon their face, and defects can only be made to appear by extrinsic evidence, a party aggrieved may maintain an action in equity to annul the assessment.

APPEAL by the defendants, The City of Buffalo and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 10th day of May, 1897, upon the decision of the court, rendered after a trial at the Erie Special Term, restraining the defendants from collecting an assessment made against several parcels of land owned by the plaintiffs for the expense of constructing a sewer in the city of Buffalo.

*W. H. Cuddeback,* for the appellants.

*John Cunneen,* for the respondents.

ADAMS, J. :

The "Providence Retreat," a domestic corporation, brought this action in its own behalf as well as in behalf of others similarly situated to have declared null and void an assessment roll made by the assessors of the city of Buffalo to defray the expense of constructing a sewer through Delavan avenue in that city, and to restrain the defendants from the collection of the assessment levied thereunder.

After the action had been commenced two other domestic corporations, viz., "The Institute of the Sisters of St. Joseph of the Diocese of Buffalo," and "Le Couteulx St. Mary's Benevolent Society for the Deaf and Dumb," united with the "Providence Retreat" and were duly made parties plaintiff.

It is an undisputed fact that each of these plaintiffs owns real estate in the city of Buffalo which is affected by the lien of the assessment; that the assessment proceedings are regular upon their face, and that the defects therein, if any there are, can only be made to appear by extrinsic evidence. It may be assumed, therefore, that a case exists in which, if the proofs sustain the plaintiffs' contention, the aid of a court of equity may properly be invoked. (*Marsh* v. *City of Brooklyn,* 59 N. Y. 280.)

The grounds upon which the action is sought to be maintained are :

(1) That the territory or district declared to be benefited by the proposed sewer was erroneously defined by the assessors instead of by the common council of the city.

(2) That the plaintiffs' lands were not benefited by the sewer for the reason that they could not be drained into or connect therewith without crossing intervening lands of third parties.

(3) That the assessors omitted to include in the area of assessment lands belonging to the Buffalo City Cemetery Association which will be benefited by the sewer.

(4) That in making such assessment the assessors proceeded upon erroneous principles ; and

(5) That the district of assessment was not, in fact, defined by the assessors, but by some person in the office of the city surveyor.

In considering cases of this character it will be well to have in mind a most salutary rule, and one which is quite general in its application, namely, that the proceedings by which a meritorious assessment is levied for the cost of a public improvement are presumed to be regular; and when the objections thereto are purely technical in their character the courts should not, in the absence of evidence of substantial injury, be overzealous to find a reason for declaring the same to be invalid. (*Gilmore* v. *City of Utica*, 131 N. Y. 26; *Voght* v. *City of Buffalo*, 133 id. 463.)

With the aid, then, of this rule and such extrinsic evidence as can be found in the record let us ascertain what merit, if any, there is in the plaintiffs' case.

So far as the first of the foregoing propositions is concerned we think there is little or no opportunity for much to be said in its support, for the Court of Appeals has lately held, in a case against this same defendant, that the city assessors were the proper officials to determine the district of assessment for local improvements. (*People ex rel. Lehigh Valley Ry. Co.* v. *City of Buffalo*, 147 N. Y. 675.)

And although this decision is based upon a provision of the city charter which was enacted in 1891, it will be found upon examination that there is no substantial difference between that provision and the one in operation when this assessment was levied. (Laws of 1891, chap. 105, §§ 144, 145; Laws of 1870, chap. 519, tit. 6, §§ 2, 3, as amended by Laws of 1875, chap. 407.)

The remaining objections, however, are not so easily disposed of, for if, in fact, the plaintiffs are assessed for a local improvement which is of no practical benefit to them, or if in levying the assessment the assessors arbitrarily omitted to include in the area of assessment other lands which are benefited by the sewer, or if the plaintiffs' assessments are increased in amount by reason of the fact that the assessors have proceeded upon some erroneous principle, it is manifest that the plaintiffs are, and each of them is, substantially injured, and consequently in a position to complain. (*Hassen* v. *City of Rochester*, 65 N. Y. 516; *Matter of Prot. Episcopal Pub. School*, 75 id. 324; *Clark* v. *Village of Dunkirk*, 12 Hun, 181; affd., 75 N. Y. 612; *Elwood* v. *City of Rochester*, 43 Hun, 102, 121; affd., 122 N. Y. 229, 236.)

Upon the trial it was made to appear by evidence which was undisputed that the lands owned and possessed by the plaintiffs, which were respectively included in the assessment roll, were so situated as to derive no benefit whatever from the construction of the sewer, and that no water could be drained from them, or any of them, into the sewer without constructing drains and ditches through intervening lands belonging to other parties over which the plaintiffs had no control; and the learned trial court found this as an established fact of the case.

In like manner it was made to appear, and was so found by the trial court, that the Buffalo City Cemetery Association owned a large tract of land lying along the northerly side of Delavan avenue; that this land was benefited by the construction of the sewer directly in front of it, and that the same was wholly omitted from the assessment roll by the city assessors.

By section 21 of title VI of the defendant's charter (Chap. 519, Laws of 1870), in force at the time of the assessment, it was provided that " No lands in the city shall be exempt from local assessments, any statute to the contrary notwithstanding." And the charter of the cemetery association, as amended in 1886, expressly provides that the same shall not be exempt from assessment for sewering any parts of the streets immediately in front of, or bounded on, any of the lands of the cemetery. (Laws of 1886, chap. 240, § 3.)

The omission on the part of the assessors would seem, therefore, to amount to a direct violation of the fundamental law from which they derive their authority to act, and this being the case, it is difficult to see upon what ground they can defend their action.

In this connection, however, it will be well to consider, for a moment, the contention of the defendant, that in determining the area of assessment the assessors had facts before them which, it must be assumed, furnished them with a sufficient reason for omitting to include the cemetery grounds in their assessment; and it is argued that, so far as the proofs show, the cemetery may be cut off from the sewer by hills and precipices which would render connection with the same impossible, or that the assessors might have determined that a natural stream which runs through the cemetery lands furnishes adequate drainage facilities, and that their determination

is consequently not subject to a collateral attack, but must be reviewed, if at all, by a writ of certiorari. Such is undoubtedly the rule where the irregularities complained of are formal in their character, or where the contention is simply that the amount of the assessment is excessive. (*County of Monroe* v. *City of Rochester,* 154 N. Y. 570.)

But we think that the proofs upon which the decision of the trial court was based establish defects in the proceedings of the assessors, which can hardly be regarded as merely technical irregularities. For they indicate quite plainly that in making the assessment complained of, these officers exceeded their jurisdiction, and, if so, the defect was manifestly substantial and vital.

In considering the contention that the defendant's assessors proceeded upon an erroneous principle in making their assessment, it is to be remembered that they were furnished a guide for their action by the provision of the city charter which directs them to " assess the whole amount ordered to be assessed upon the parcels of land benefited by work, act or improvement in proportion to such benefit " (Tit. 6, § 3, as amended by chap. 407, Laws of 1875); that in determining this question they acted judicially, and that, consequently, their action is not open to review unless it be made to appear that the principle adopted by them was clearly erroneous. (*O'Reilley* v. *City of Kingston*, 114 N. Y. 439.)

As respects this feature of the case, the record before us is not altogether satisfactory. Indeed, we infer from such evidence as it does furnish that the case was tried quite informally, and that, in many instances, presumptions were relied upon by counsel upon either side to supply proofs which were lacking; but, as nearly as we can determine, the conclusion reached by the assessors was that lands abutting upon a street through which the sewer was laid should be assessed a certain sum per foot front, and that the remainder of the district was then subdivided, and the land in each subdivision was assessed a certain sum per square foot, regard being had in fixing this sum to the relative distances of the several subdivisions from the sewer and the proportionate benefit to be derived therefrom. If this is a correct statement of the principle adopted, we are not prepared to say, as matter of law, that it was erroneous, but, without passing definitely upon that question, we proceed to a considera-

tion of the remaining objection which, we think, necessarily requires an affirmance of the judgment appealed from.

As has already been stated, the only source from which the assessors derived their authority to act was the city charter, and that instrument commanded them to act as a body, and, consequently, as a separate and distinct branch of the municipality. Moreover, their action in adopting a rule upon which the assessment was to be made was of such a nature as to require the exercise of careful, deliberate and corporate judgment, and it could not, therefore, be delegated to third parties, or to any other department of the city government. (*Powell* v. *Tuttle*, 3 N. Y. 396; *Comrs. of Excise* v. *Sackrider*, 35 id. 154; *Birdsall* v. *Clark*, 73 id. 73.)

It appears, however, that in this particular instance the district of assessment was defined and the assessment apportioned, not by the assessors acting in concert, but by the adoption of a map prepared in the office of the city engineer by some person whose identity is not made known. In speaking of this map one of the assessors testified, and in this he stands uncontradicted : " That is the map we made our assessments from, and we made it absolutely as it was marked out — as these outside lines were marked. That is the rule we follow in assessing a district. * * * We never had any meeting of the Board of Assessors to determine the extent or the area of this sewer district, not outside this map. * * * If the surrounding lands, and the Cemetery Association, and a hundred feet north of the present line, *had been left out or put in, we would never have had any reason to find fault, and would have followed it just as absolutely as we did this.* We had a meeting of the Board for the purpose of having the Engineer with us to talk it over as to whether any part of this district could be sewered, and we took it as his judgment, absolutely, that we had got to keep within these limits."

Upon inspection of the map thus referred to it will be seen that whoever drew the same assumed to define the assessment district and thereby relieve the assessors of the duty of exercising any judgment whatever in the matter; a privilege which they appear to have been quite swift to avail themselves of, but one, nevertheless, which placed them in the attitude of transgressing a plain command of the charter from which their official being was derived. And this fact of itself is sufficient, in our judgment, to overcome any presumption

as to the regularity of the proceedings and to uphold the conclusion reached by the learned trial court. The judgment appealed from should, therefore, be affirmed.

All concurred.

Judgment affirmed, with costs.